**Angel HERNANDEZ, Plaintiff-Appellant,**

v.

**CONRIV REALTY ASSOCIATES,
Defendant-Appellee.**

**No. 1143, Docket 96-7561.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 27, 1997.

Decided May 1, 1997.

As Amended May 23, 1997.

Isaac Parsee, New York City (Angel Hernandez, New York City, pro se, of counsel), for Appellant.

Robert I. Gosseen, New York City (Gallagher Gosseen & Faller, New York City, of counsel), for Appellee.

Before: VAN GRAAFEILAND, MESKILL and CABRANES, Circuit Judges.

MESKILL, Circuit Judge:

After defendant removed this case from state court to the United States District Court for the Southern District of New York, Knapp, *J.*, the plaintiff committed various procedural violations. As sanctions, the district court dismissed plaintiff's claims with prejudice and ordered plaintiff to pay defendant's attorney's fees. Despite defendant's contentions that plaintiff's claims are preempted by 29 U.S.C. § 185 and are therefore removable, we conclude that there is no federal jurisdiction over this case. However, because a district court can validly impose sanctions for procedural violations even though it lacks jurisdiction over the case, it may nevertheless be proper to impose sanctions on plaintiff. We vacate the judgment and remand the case to the district court for it to reconsider whether to impose sanctions.

## BACKGROUND

On April 27, 1995, Angel Hernandez filed suit against his employer, Conriv Realty Association (Conriv) in the Supreme Court of the State of New York. The complaint alleged that while Hernandez was employed by Conriv, he was induced by Conriv to "terminate his status as a union member, and to continue in [Conriv's] employ as a non-union worker" because Conriv "did not want to comply with union requirements." In consideration for his withdrawal from the union, Hernandez allegedly was promised that Conriv would pay him for work he performed that was beyond the ordinary scope of his duties, that he would be employed as long as Conriv owned the building in which he worked, and that he "would continue to receive all of the benefits that he had been receiving as a union member." Hernandez claimed that Conriv breached the contract by "failing to pay [him] according to the agreement and by terminating his employment in violation" of Conriv's promises. Hernandez also claimed that Conriv committed common law fraud and violated New York Labor Law Article 6.

On May 18, 1995, Conriv removed the action to the United States District Court for the Southern District of New York, Knapp, *J. See* 28 U.S.C. § 1441(a) ("any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to [United States] district court"). Conriv contended that the district court had original jurisdiction over Hernandez's action under the Labor Management Relations Act (LMRA) § 301, 29 U.S.C. § 185. No motion was made for a remand to state court and the district court proceeded to adjudicate the case, apparently accepting Conriv's jurisdictional argument.

Although Hernandez was represented by counsel when his complaint was filed, on September 19, 1995, the district court granted counsel permission to withdraw because of disputes between counsel and Hernandez. Following the withdrawal of counsel, Hernandez failed to respond to discovery requests, failed to comply with a court order to either hire new counsel by a specified date, request more time or proceed *pro se,* and failed to appear at a scheduled pretrial conference.

On January 26, 1996, Conriv moved to have Hernandez's case dismissed, arguing that dismissal was proper under Fed.R.Civ.P. 16(f) and Fed.R.Civ.P. 37, because of Hernandez's various violations and failures. On February 28, 1996, the district court dismissed Hernandez's suit with prejudice and referred the case to a magistrate judge to charge Hernandez with Conriv's attorney's fees and expenses relating to the missed pretrial conference. On May 22, 1996, the magistrate judge ordered Hernandez to pay Conriv $627.75 for those fees and expenses.

Hernandez appealed *pro se.* We conclude that there is no federal jurisdiction over this case, and therefore vacate the district court's

judgment and remand the case for further proceedings.

## DISCUSSION

### A. *The Removal Standard*

■ The basic rules for the removal of cases from state court to federal court are well settled. An action which was originally filed in state court may be removed by a defendant to federal court only if the case could have been originally filed in federal court. 28 U.S.C. § 1441(a). Aside from diversity of citizenship jurisdiction,[1] a case may be filed in federal court only if a federal question appears on the face of the plaintiff's "well-pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Therefore, if a complaint alleges only state law based causes of action, it cannot be removed from state court to federal court even if there is a federal defense. *Id.* at 392–93, 107 S.Ct. at 2429–30. "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* at 392, 107 S.Ct. at 2429.

■ Federal preemption is a defense, and therefore, the general rule is that even if a state law based cause of action is preempted by federal law, the case cannot be removed. *Id.* at 392–93, 107 S.Ct. at 2429–30. However, under the "complete pre-emption" doctrine, the Supreme Court has held that "[o]n occasion . . . the preemptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 393, 107 S.Ct. at 2430 (quotations omitted). When federal law has completely preempted state law, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law" and is removable. *Id.*

■ The complete preemption doctrine is ordinarily associated with LMRA § 301(a), 29 U.S.C. § 185(a), the section that Conriv contends creates federal jurisdiction here.[2] Under section 301, state law based claims for "[s]uits for violation of contracts between an employer and a labor organization" are completely preempted, and if such a suit is filed in state court, it can be removed to federal court. *Caterpillar*, 482 U.S. at 393–94, 107 S.Ct. at 2430–31. Therefore, if Hernandez's claims are preempted by section 301, federal jurisdiction exists and the removal of his case was proper.

Although the Supreme Court has interpreted the preemptive scope of section 301 broadly, the Court has repeatedly cautioned that "it would be inconsistent with congressional intent under [section 301] to pre-empt state rules that . . . establish rights and obligations, independent of a labor contract." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 212, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985); *Hawaiian Airlines v. Norris*, 512 U.S. 246, 260–61, 114 S.Ct. 2239, 2248, 129 L.Ed.2d 203 (1994) (discussing the preemption standard of the Railway Labor Act, which the Court described as "virtually identical to the pre-emption standard the Court employs in cases involving § 301" and quoting the *Lueck* passage quoted above); *Livadas v. Bradshaw*, 512 U.S. 107, 123–24, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994) ("it is the legal character of a claim, as independent of rights created under the collective-bargaining agreement, that decides whether a state cause of action may go forward") (citation omitted).

To determine whether a claim is preempted, and hence removable, the Supreme Court has said that "an application of state law is pre-empted by § 301 . . . if such application requires the *interpretation* of a collective-bargaining agreement." *Lingle v. Norge Division of Magic Chef*, 486 U.S. 399, 413, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988) (em-

---

1. Conriv and Hernandez are both citizens of the State of New York, and diversity jurisdiction is therefore inapplicable.

2. In its Notice of Removal, Conriv contended that federal jurisdiction was proper under LMRA § 301(a) & (c), 29 U.S.C. § 185(a) & (c). How-

ever, section 301(c) creates jurisdiction for suits "by or against labor organizations" and is plainly inapplicable. In the text, we consider Conriv's position that jurisdiction was proper under section 301(a).

phasis added); *Shafii v. British Airways, PLC*, 83 F.3d 566, 569–70 (2d Cir.1996) (holding that a state-law claim is preempted and removable from state court if resolution of the claim "depends on an interpretation of the collective-bargaining agreement") (quotation omitted). However, the *Lingle* Court cautioned against applying section 301 preemption too broadly, stating:

> A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled. Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state-law claim, not otherwise pre-empted, would stand. Thus, as a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective bargaining agreement and a separate state-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby preempted.... [N]ot every dispute ...: tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301.

*Lingle*, 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12 (quotation and citations omitted); *Livadas*, 512 U.S. at 124, 114 S.Ct. at 2078 ("when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished").

### B. *The Standard Applied*

As mentioned above, Hernandez alleges that while he was employed by Conriv, he was induced by Conriv to "terminate his status as a union member, and to continue in [Conriv's] employ as a non-union worker." In consideration for his withdrawal from the union, Hernandez alleges that Conriv made certain promises, and that Conriv breached a contract between the two by failing to fulfill those promises. Hernandez also alleges that Conriv committed common law fraud and

violated New York Labor Law Article 6. In light of the standards discussed above, we will consider each of Hernandez's claims to determine if the claim is preempted by section 301 and therefore removable.

■ We will consider Hernandez's breach of contract claim in two parts. First, Hernandez alleges that Conriv breached promises to pay him for work he performed that was beyond the ordinary scope of his duties and to employ him as long as Conriv owned the building in which he worked. These claims are state law breach of contract claims, and there appears to be no need for a court even to refer to a collective bargaining agreement to adjudicate these claims. Therefore, resolution of these claims will not involve the "interpretation" of a collective bargaining agreement, *Lingle*, 486 U.S. at 413, 108 S.Ct. at 1885, and the claims are not preempted and do not support federal jurisdiction. *See Caterpillar*, 482 U.S. at 388–99, 107 S.Ct. at 2427–33 (union members sued their employer in state court on contracts which were independent of and required no reference to a collective bargaining agreement, and Court held the claims were not preempted and could not be removed from state court); *Shafii*, 83 F.3d at 568–70 (similar).

■ Second, Hernandez also alleges that Conriv promised that if he left the union, he "would continue to receive all of the benefits that he had been receiving as a union member," and that Conriv breached the contract by "failing to pay [him] according to the agreement." As with Hernandez's other breach of contract claims, this is a state law breach of contract claim, indicating that it is not preempted and not removable. *See Livadas*, 512 U.S. at 123–24, 114 S.Ct. at 2078 ("it is the legal character of a claim, as independent of rights created under the collective-bargaining agreement, that decides whether a state cause of action may go forward"); *Caterpillar*, 482 U.S. at 388–89, 107 S.Ct. at 2427–28 (holding that union members' suit based on contract that was independent of a collective bargaining agreement was not preempted and not removable); *Derrico v. Sheehan Emergency Hospital*, 844

F.2d 22, 26 (1988) ("we know of no case holding that a contract between an employer and an *individual* employee falls under section 301"). However, in contrast to Hernandez's other contract claims, to adjudicate this claim, a court will have to refer to a collective bargaining agreement to determine Hernandez's rate of pay. However, "not every dispute ... tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301" and "[a] collective-bargaining agreement may ... contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled." *Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12 (quotation omitted); *Livadas,* 512 U.S. at 124, 114 S.Ct. at 2078 ("when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished"). When this occurs, "federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby preempted." *Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12. Accordingly, like Hernandez's other breach of contract claims, this claim is not preempted and does not support federal jurisdiction.

■ Hernandez also alleges that Conriv committed common law fraud, as Conriv allegedly made the promises discussed above knowing them to be false and with an intent to deceive. To resolve this claim, a court either will never refer to a collective bargaining agreement, *see Caterpillar,* 482 U.S. at 395, 107 S.Ct. at 2431, or will refer to the collective bargaining agreement only to determine Hernandez's damages, if appropriate, *see Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12. Therefore, like Hernandez's breach of contract claims, this claim does not require the interpretation of a collective bargaining agreement, and therefore it is not preempted and does not support federal jurisdiction.

■ Finally, Hernandez alleges that Conriv violated New York Labor Law Article 6 by failing to pay his wages and provide other benefits which he was allegedly promised. This claim focuses on the same issues as Hernandez's breach of contract claims, and therefore we again look to the Court's statements in *Lingle* that "not every dispute ... tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301" and "[a] collective-bargaining agreement may ... contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled." *Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12 (quotation omitted); *see also Livadas,* 512 U.S. at 111, 121–25, 114 S.Ct. at 2071–72, 2076–79 (discharged union member sued under state statute for back wages, and Court held the claim was not preempted). When this occurs, "federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby preempted." *Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12. Accordingly, like Hernandez's breach of contract and fraud claims, this claim is not preempted and does not support federal jurisdiction.

We therefore conclude that there is no federal jurisdiction over this case.

### C. *Lack of Jurisdiction and Procedural Sanctions*

■ As mentioned above, the district court believed that it had jurisdiction over Hernandez's claims, and as sanctions for Hernandez's procedural violations, the court dismissed Hernandez's claims with prejudice and ordered Hernandez to pay Conriv's attorney's fees relating to the missed pretrial conference. *See* Fed. R. Civ. P. 16(f) (if a party fails to attend a pretrial conference, the court can impose just sanctions, including, *inter alia,* those sanctions provided for in Rule 37(b)(2)(C) (which allows a court to dismiss an action with prejudice) and reasonable attorney's fees). Although we concluded above that the district court lacked jurisdiction over Hernandez's claims, that conclusion does not establish that the district court could not impose sanctions on Hernandez for his procedural violations.

In *Willy v. Coastal Corp.,* 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992), the

district court concluded that the petitioner violated Rule 11 and ordered the petitioner to pay the respondent's attorney's fees. *Id.* at 133, 112 S.Ct. at 1078. Although it was eventually decided that the district court lacked subject matter jurisdiction over the case, the Supreme Court nevertheless held that the district court could properly impose Rule 11 sanctions on the petitioner. *Id.* at 137–39, 112 S.Ct. at 1079–81 The Court reasoned that imposing sanctions for procedural violations despite a lack of jurisdiction did not create constitutional problems because imposing such sanctions "does not signify a district court's assessment of the legal merits of the complaint. It therefore does not raise the issue of a district court adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction." *Id.* at 138, 112 S.Ct. at 1081 (quotation and citation omitted); *cf.* 28 U.S.C. § 1919 ("Whenever an action or suit is dismissed in any district court ... for want of jurisdiction, such court may order the payment of just costs.").

■ Here, the district court ordered Hernandez to pay Conriv's attorney's fees related to the pretrial conference which Hernandez missed. Such an order is a procedural sanction that "does not signify [the] district court's assessment of the legal merits of" Hernandez's claims, *Willy,* 503 U.S. at 138, 112 S.Ct. at 1080, and therefore, the order creates no constitutional concerns. Further, the district court also dismissed Hernandez's claims with prejudice because of Hernandez's various procedural violations. Again, such an order is a procedural sanction, albeit a harsh one, which "does not signify [the] district court's assessment of the legal merits of" Hernandez's claims, *id.,* and therefore, the order creates no constitutional concerns. *See In re Exxon Valdez,* 102 F.3d 429, 431 (9th Cir. 1996) (even though the district court may have lacked jurisdiction, the court upheld the district court's order dismissing plaintiffs' claims with prejudice due to plaintiffs' procedural violations, as the sanction, was "collateral to the merits of the actions").

■ Although we have concluded that the district court's orders created no constitutional concerns, we must nevertheless determine whether the orders were proper under the Federal Rules of Civil Procedure. *See Willy,* 503 U.S. at 135 n. 1, 112 S.Ct. at 1079 n. 1 (assuming the district court's order was proper under the rules of civil procedure). Although our review of the record does not indicate that the district court's orders were improper, in light of our holding that the district court did not have jurisdiction over this case, we conclude that the court should reconsider whether to impose sanctions on Hernandez, who became *pro se* shortly after the defendant improperly removed the case to the federal court. If the court decides to impose sanctions, the court should also reconsider what sanctions are appropriate. If the district court decides that dismissing Hernandez's claims with prejudice is too harsh a penalty, the court should remand this case to the state court from which it was removed. In any event, we intimate no view as to what action the district court might take, in the exercise of its conceded discretion, in the circumstances presented on remand. The district court's judgment is therefore vacated and the case is remanded for further proceedings.

## CONCLUSION

The district court's judgment is vacated and the case is remanded for further proceedings.